UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Scott MacIver,

      Plaintiff,

v.              Case No. 8:13-cv-01759-MSS-TGW

City of Lakeland, Florida,

      Defendant.

_____/

## PLAINTIFF'S MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER AGAINST THIRD-PARTY SUBPOENA

 Plaintiff Scott MacIver respectfully asks the Court to quash and/or issue a protective order barring Defendant from serving on a third party a subpoena duces tecum commanding production of Plaintiff's military medical records. Plaintiff brings this motion pursuant to Rules 26(c) and 45(d)(3) of the Federal Rules of Civil Procedure and certifies he conferred in good faith with Defendant in an effort to resolve the dispute without court action.

 Defendant's proposed subpoena at issue in this motion is directed to the records custodian of an Army psychiatrist, Janet L. Hunter, M.D., who treated Plaintiff for post-traumatic stress disorder when he was in the military. (*See* Ex. B.) The subpoena commands production of the following:

> All medical records, office records, correspondence, doctors', nurses' and staffs' notes, dictations, transcriptions, prescriptions, reports, emails and electronic records, and all other data in possession of the witness of this subpoena pertaining to the evaluation, diagnosis, treatment and care of Mr. Maciver through and including December 31, 2010, including but not limited to the memorandum attached hereto as Exhibit 1.

(*Id.*) As explained below, the subpoena seeks information that is neither relevant nor necessary,

is overbroad, and serves no purpose other than to embarrass and humiliate Plaintiff and unreasonably invade his privacy.

## Background

Plaintiff's lawsuit is brought under the Uniformed Services Employment and Reemployment Act of 1994 (USERRA), as amended, 38 U.S.C. 4301 *et seq.* USERRA is intended to encourage service in the military and provide for prompt reemployment of employees upon completion of military service. 38 U.S.C. § 4301(a). *See United States v. Alabama Dep't of Mental Health & Mental Retardation*, 673 F.3d 1320, 1324 (noting that USERRA "represents long-standing national policy intended to encourage service in the armed forces" and requires employers to promptly reemploy employees returning military service). The Act must be liberally construed in favor of veterans and servicemembers. *See, e.g., Gordon v. Wawa, Inc.*, 388 F.3d 78, 81 (3d Cir. 2004) ("[W]e construe USERRA's provisions liberally, in favor of the service member."); *Hill v. Michelin North America, Inc.*, 252 F.3d 307, 312-13 (4th Cir. 2001) ("Because USERRA was enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed in favor of its military beneficiaries."); *Chance v. Dallas County Hosp. Dist.*, 176 F.3d 294, 297 n.14 (5th Cir. 1999) ("The legislative history does reveal that the USERRA is to be 'liberally construed.'"); *McGuire v. United Parcel Service*, 152 F.3d 673, 676 (7th Cir. 1998) ("[T]he USERRA is to be liberally construed in favor of those who served their country.").

Plaintiff is claiming that Defendant violated Section 4313 of USERRA by failing to reemploy him after his military service as required under that section, including failure to promptly reemploy him and failure to reemploy him in the position he would have held had he

not been away for military service. (Doc 18 at 9-10.) He is further claiming that Defendant violated Section 4302(b) of USERRA by requiring him to submit medical documentation as a condition of reemployment (*Id.* at 8-9); and, alternatively to Plaintiff's Section 4313 claim, that Defendant unlawfully terminated Plaintiff during the protection-from-discharge period provided in Section 4316(c)(1) of USERRA (*Id.* at 11-12).[1]

In his Second Amended Complaint ("Complaint") (Doc 18), Plaintiff alleges, *inter alia*, that: Defendant hired him as a police officer in 2001; he was a member of the Army National Guard and took leaves of absence from his employment with Defendant to perform federal military service; on February 21, 2011, he was released from his final period of military service due to disability (with an "Honorable" characterization of his service) and medically retired from the Army National Guard due to service-connected disability; in November 2010, in anticipation of his release from service, he sent Defendant his shift bid for 2011 and requested to return to employment in January 2011, when he would be on terminal leave[2] from active duty; in December 2010, Defendant demanded he contact his Army treating physician and have the physician review the police officer job description and attest in writing that he could perform the essential functions of the position; unaware of any illegality of such demand, he obtained documentation from his Army treating physician and sent it to Defendant; in January 2011, Defendant declined to reemploy him prior to his separation from military service and directed him to contact Defendant's City Nurse, Barbara Jordan, for instructions on additional

---

[1] It has come to Plaintiff's attention that an inadvertent typographical error appears in ¶ 55 of the Complaint (Doc 18 at 10). The phrase "continuous employment with Plaintiff" should read "continuous employment with Defendant." Plaintiff apologizes for the error.

[2] "Terminal leave" is a leave of absence from military service that a servicemember may take prior to separation from such service and during which paid-leave time accrued in the military is used.

medical information required of him; on February 22, 2011 (the day after his separation from military service), he met with Defendant's agents to discuss reemployment with Defendant, but  no position was offered; on April 6, 2011, Defendant deemed him reemployed and commenced paying him accrued paid-leave benefits but did not assign him to any position; after paying Plaintiff over the course of several months his accrued paid leave benefits, Defendant placed Plaintiff on paid administrative leave; in mid-December 2011, Defendant offered Plaintiff several positions and told him to contact Defendant's employment relations director by December 28, 2011, if he were interested in obtaining one of the positions; the offered  positions were not police officer positions and were of inferior pay and status to the position of police officer; Plaintiff did not desire the offered positions and thus did not contact the employee relations director to express interest in them; Defendant discharged Plaintiff, effective December 29, 2011.

Plaintiff's Complaint makes no allegation that Defendant injured him physically or psychologically. Nor is there any claim for compensatory damages for physical or mental injury. USERRA, in any event, does not authorize such damages.

On July 10, 2014, Defense counsel sent the undersigned a notice of intent to serve the subpoena at issue here, a copy of the subpoena, a release authorizing Dr. Janet L. Hunter to produce Plaintiff's health information (Ex. A), and a cover letter asking that Plaintiff sign and return the release by July 18, 2014. The release stated disclosure of the following types of information concerning Plaintiff was authorized: "[c]omplete records for the period January 1, 2005, to the present"; "[l]ab tests and results"; "[c]omplete records documents, notes, assessments, treatment plans, attendance records and billing records pertaining to counseling

and psychotherapy sessions from [no date specified] through the present"; "[c]laims records, claims status, and patient management records pertaining to counseling and psychotherapy sessions from January 1, 2001, through the present; and "[a]ny and all documents, including but not limited to, medical records, physician and staff notes, dictations and/or transcriptions, prescription records, assessments, treatment plans and discharge plans relating to counseling and psychotherapy sessions from January 1, 2005, through the present." (Ex. A.) Further, the release was to be "in force and effect" until completion of this lawsuit. (*Id.*).

"Exhibit 1" requested by and attached to the subpoena is a memorandum dated December 8, 2010, from Dr. Hunter to the Defendant's police chief stating the following:

> OFC MacIver has been under my medical care for treatment of post traumatic stress disorder (PTSD). He has been declared medically disabled by the Physical Evaluation Board of the US Army. Due to the nature of PTSD, and due to the job description for a police officer, it is recommended that OFC MacIver not return to the duties of a police officer. It is anticipated that the duties of a police officer would exacerbate the symptoms of his PTSD. His permanent military profile instructs him to carry no weapons due to the nature of his condition and also due to the medications which he takes to treat PTSD.

(Ex. B at 5.)

During the interval between Plaintiff's submission in November 2010 of his shift bid and his release from the military in February 2011, Plaintiff sent Defendant the Hunter memorandum and several other military medical records in response to Defendant's requests for medical information. Defendant has alleged that it relied on these documents in making the decisions at issue in this lawsuit. (Ex. C. (Defendant's Second Amend Answers to Plaintiff's First Set of Interrogatories, excerpted): answer to Interrogatory 1; *see also id.*: answers to Interrogatories 6 and 8-10.)

Also during that interval, Plaintiff notified Barbara Jordan that he signed a release

authorizing her to contact his military nurse case manager and have access to "any of my medical records or speak to any of my providers that you may need to." (Ex. D.) However, discovery has revealed no effort by Jordan to communicate with Plaintiff's military providers or obtain records directly from them.

On July 16, 2014, the undersigned conferred with defense counsel pursuant to Local Rule 3.01(g) regarding the proposed subpoena and release and notified defense counsel that Plaintiff objected to same and would not sign the release. Defense counsel contended that the medical records sought were relevant to whether Plaintiff qualified to perform the duties of a police officer, and the release was necessary to subpoena the records. The undersigned offered as a resolution to stipulate to the authenticity of the memorandum of Dr. Hunter, which is requested by and attached as "Exhibit 1" to the subpoena. Defense counsel said she would consider the proposed resolution and get back with the undersigned.

On July 18, 2014, defense counsel notified the undersigned that Defendant was withdrawing its request that Plaintiff sign the release. However, defense counsel said Defendant still wanted to serve the subpoena, and declined to enter into the proposed authenticity stipulation. Other alternatives were proposed, but none was mutually agreeable.

Defense counsel has not served the proposed subpoena and has graciously agreed to allow Plaintiff up to noon on July 28, 2014, to file a motion for protection from the proposed subpoena. Defense counsel has confirmed Defendant will continue to hold off on serving the proposed subpoena while the matter is considered by the Court.

## Analysis

**Plaintiff has standing to bring this motion**

Rule 26(c) empowers the Court to enter a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding discovery, prohibiting discovery of certain matters, and limiting the scope and manner of discovery. *See* Fed. R. Civ. P. 26(c)(1)(A)-(D). Rule 45(d)(3) authorizes the Court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(iii). The scope of permissible discovery through a Rule 45 subpoena is the same as allowed for other forms of discovery. *See* Fed. R. Civ. P. 45 1970 Advisory Committee Notes; *Ross v. Livingston*, 2012 WL 4862827 (M.D. Ga. 2012) ("[T]he Court determines whether the subpoena *duces tecum* at issue seeks irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production."); *Liles v. Stuart Weitzman, LLC*, 2010 WL 1839229 (S.D. Fla. 2010) ("Any subpoena that is issued to non-parties pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement" (quoting *Ireh v. Nassau Univ. Med. Ctr.*, 2008 WL 4283344, at *5 (E.D.N.Y. 2008)); *Chamberlain v. Farmington Savings Bank*, 2007 WL 2786421, at *1 (D. Conn. 2007) ("It is well settled that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26.").

Plaintiff is moving for an order quashing Defendant's subpoena pursuant to Rule 45(d)(3) and granting him protection under Rule 26(c) from this particular discovery. Plaintiff's motion is based upon his standing to avoid infringement of a personal right and privilege—his right of privacy in his medical records and privilege in communications with

7

Dr. Hunter. The courts recognize a privacy interest in patients' medical records. *See, e.g., In re Grand Jury Subpoena John Doe No. A01-209*, 197 F. Supp. 2d 512, 514 (E.D. Va. 2002) (quoting *Doe v. Southeastern Pa. Transp. Auth.*, 72 F.3d 1133, 1137 (3d Cir. 1995) (recognizing a privacy interest in prescription records and construing *Whalen v. Roe*, 429 U.S. 589, 602 (1977) to do the same)).   Indeed, "[m]edical information is inherently intimate and personal and 'is precisely the sort [of information] intended to be protected by penumbras of privacy.'" *In re Grand Jury Subpoena*, 197 F. Supp. 2d at 514, n. 6 (quoting *Doe*, 72 F.3d at 1138).  Moreover, "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).

**Military medical records Defendant never possessed have no or little relevance**

The extensive military medical records Defendant proposes to subpoena—"all" documents in the possession of Dr. Hunter's records custodian pertaining to evaluation, diagnosis, treatment and care of Plaintiff through and including December 31, 2010[3]—would have little or no relevance in this case.

Defendant errs in its position that the military medical records it seeks would be relevant to whether Plaintiff was qualified to perform the duties of a police officer. The relevancy of job qualifications, including physical and mental qualifications, in this lawsuit is informed, and constrained, by USERRA. USERRA imposes no requirement that an employee returning from military service meet an employer's qualification standards to be entitled to

---

[3] It is conceivable that such custodian would be the Department of the Army, rather than Dr. Hunter or an office manager assigned to her. Should that be so, the subpoena could be construed as asking for the entirety of Plaintiff's Army medical records from the inception of his military career, given that the subpoena specifies no beginning date for the records requested and is not limited to records of Dr. Hunter.

reemployment. Rather, he is entitled to reemployment with the employer if: (1) he was absent from employment with the employer by reason of military service; (2) he gave the employer written or verbal advance notice of the service (unless giving of notice was precluded by military necessity or was otherwise impossible or unreasonable); (3) the cumulative total of his periods of such service during his employment relationship with the employer does not exceed five years (excluding any exempt periods of service); (4) after release from the service, he timely applied for reemployment; and (5) he was separated from the service under other than dishonorable conditions. 38 U.S.C. § 4312(a); 20 C.F.R. § 1002.32(a).

If the employee meets the above criteria, the employer must "promptly" reemploy him in the position mandated by the applicable reemployment priority scheme set forth in Section 4313 of USERRA, two of which are based on an employee's length of military service and one of which applies if the employee has a disability incurred in or aggravated during military service. 38 U.S.C. § 4313(a). The employer must do so in the order of priority specified in the applicable reemployment priority scheme. *Id. See Alabama Dep't of Mental Health & Mental Retardation*, 673 F.3d at 1324 (noting that "USERRA requires an employer to promptly reemploy" a veteran who meets the requirements of 38 U.S.C. § 4312(a)); and "the employer must offer" such veteran the top-tier position in the applicable reemployment-priority scheme).

The employer cannot lawfully require that the employee satisfy any job or medical qualifications as a condition of reemployment. Absent from the exhaustive list of reemployment-eligibility prerequisites at Section 4312(a) of USERRA is any such requirement. Nor does the Act authorize the employer to expand the list by adding further requirements. Far to the contrary, USERRA supersedes any employer policies and practices

(as well as state or local laws) that impose prerequisites to reemployment rights and benefits additional to those required by the Act. 38 U.S.C. § 4302(b). *See Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 443 (6th Cir. 2008) ("At the point at which [police officer] was entitled to reemployment . . . , [his employer] had no basis on which to question his qualifications. [He] had satisfied the only prerequisites to § 4313—those specified in § 4312—and [the employer]'s attempt to impose additional prerequisites . . . was . . . wholly impermissible) (citing 38 U.S.C. § 4302(b)); *Brown v. Prairie Farms Dairy, Inc.*, 872 F. Supp. 2d 637, 645 (M.D. Tenn. 2012) ("While Defendant attempts to cast doubt on Plaintiff's physical qualifications, such considerations cannot be taken into account before reemployment.  Put differently, once Plaintiff has satisfied the prerequisites in § 4312 . . . then Plaintiff must be reemployed, and only then, when determining the particular position in which to reemploy Plaintiff, can Defendant consider Plaintiff's qualifications.").

Plaintiff is claiming, *inter alia*, that Defendant failed to reemploy him in the top-tier position in the reemployment scheme applicable to returning servicemembers who have a disability incurred in or aggravated during military service—the position of employment in which he would have been employed if his employment had not been interrupted by military service. 38 U.S.C. § 4313(a)(3). Because inquiry into a returning servicemember's physical or mental qualifications, much less any qualifications, for a civilian job is not authorized by USERRA for determining whether the servicemember is entitled to reemployment under Section 4313—and, indeed, is proscribed by Section 4302(b)—such inquiry would not be relevant to determining Plaintiff's eligibility for reemployment.

Plaintiff further notes that USERRA limits the types of documents that an employer

may require of a returning servicemember seeking reemployment. 38 U.S.C. § 4312(f)(1); 20 C.F.R. § 1002.123(a). Authorized documents are only those showing the servicemember met certain reemployment-eligibility criteria specified in Section 4312(a)—timely application for reemployment; service within the five-year limit; and separation from service under other than dishonorable conditions. The statute prohibits an employer from requesting medical documentation showing the employee meets the employer's physical or mental standards as a condition of reemployment. *Prairie Farms Dairy*, 872 F. Supp. 2d at 645 n.4 (employer was "legally prohibited from requesting [medical] documentation under USERRA").   Defendant should not be permitted in discovery to demand Plaintiff's military medical records for such purpose when it is not authorized to do so under USERRA.

While qualifications for the USERRA-mandated reemployment position may be considered *after* the employee is placed in the position, USERRA's requirements affect the relevance of qualifications here as well. The focus must be on whether the employee is "qualified" for the position within the meaning of USERRA: "having the ability to perform the essential tasks" of the position. 38 U.S.C. § 4303(9). Defendant's sweeping document request in not so targeted. Furthermore, because determination of whether the employee is so qualified must occur after reemployment in the requisite position, such determination necessarily must be as of the time the employee is employed in the position, not before. Past medical records are unlikely to be probative of current status and even if relevant at one time, the older the record, the more its relevance diminishes. Here, Defendant wants to obtain "all" military medical records on Plaintiff that Dr. Hunter may have from whatever point in time such records start up to December 31, 2010. The records it seeks thus would be old, all preceding Plaintiff's

February 21, 2011, release from military service and Defendant's failure to reemploy him as a police officer thereafter, and thus of little or no relevance to whether Plaintiff was qualified within the meaning of USERRA during the period at issue in this suit.

Even if old military medical records were to show a physical or mental limitation affecting a veteran's present ability to perform essential tasks of his reemployment position, the records would be of little or no relevance to the employee's qualification for the position under USERRA. That would be so because such records necessarily would not and could not include actions that an employer must take to qualify the veteran for the reemployment position. The employer must make reasonable efforts to qualify the veteran for the position, including, but not limited to, providing necessary training and accommodating his service-related disability. 38 U.S.C. § 4313(a)(1)(B), (2)(B), (3), (4); 20 C.F.R. §§ 1002.196, 1002.197, 1002.198, 1002.225, 1002.226. Determination of lack of qualification cannot be made until after the employer has undertaken such efforts. 20 C.F.R. § 1002.198(b) ("*Only after* the employer makes reasonable efforts . . . may it determine that the employee is not qualified for the reemployment position.") (emphasis added).

Another reason why the military medical records that Defendant seeks are irrelevant is that—with the exception of the Hunter memorandum and other military medical records that Defendant obtained prior to Plaintiff's separation from the military—Defendant did not possess those records when it made the decisions at issue in this suit. Only documents upon which Defendant alleges it relied in making those decisions would be relevant in evaluating the lawfulness of Defendant's decisions. *See Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) ("As the ultimate issue is the employer's reasoning *at the moment* the questioned

employment decision is made, a justification that *could not* have motivated the employer's decision is not evidence that tends to illuminate this ultimate issue and is therefore simply irrelevant . . . .") (emphasis in original). *Cf. Hill v. Seaboard Coast Line R.R. Co.*, 767 F.2d 771, 774 (11th Cir. 1985) ("Of course, failure to promote a plaintiff because the person actually promoted was more qualified is a non-discriminatory reason, but the articulation of that reason must include the fact that the decision-maker knew that the promoted individual's qualifications were superior *at the time* the decision was made.") (emphasis added). Defendant thus cannot use the discovery process for the purpose of finding new evidence to bolster decisions it made during the relevant time period.

**The subpoena is overbroad and unnecessary**

Even assuming military medical records of Plaintiff that Defendant does not already possess may be relevant to determining whether Plaintiff was qualified for reemployment under USERRA as a police officer (the position in which he would have been employed had he not been absent for military service (Ex. C at 8: answer to Interrogatory 10)), Defendant's proposed subpoena must be rejected as overly broad and unduly invasive of his privacy. The subpoena is not narrowly tailored to obtain records relevant to any specific essential task of the position or any particular accommodation that would enable Plaintiff to perform such essential task. Nor is it narrowly drawn to achieve minimal invasion of Plaintiff's privacy or avoid disclosure of confidential communications of Plaintiff with Dr. Hunter or any other therapist who may have treated Plaintiff while he was in the military.

To the extent the proposed subpoena seeks to obtain a copy of the Hunter memorandum, the subpoena is overbroad and unnecessary. Plaintiff provided the

memorandum to Defendant before he was released from the military. Further, both parties exchanged copies of the memorandum in discovery. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) ("On motion or on its own, the court must limit the . . . extent of discovery otherwise allowed by [the rules of procedure] if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive . . ."). The same would hold true for any other of Plaintiff's military medical records that Plaintiff furnished to Defendant during the relevant time period and upon which Defendant allegedly relied in making the decisions at issue in this lawsuit.

**Defendant may not conduct a fishing expedition for derogatory information**

The medical records requested in Defendant's proposed subpoena are so extensive and intimate as to raise concern Defendant seeks to conduct a fishing expedition in hopes of netting derogatory information to prejudice and embarrass Plaintiff. Of course, such a purpose is not authorized by the discovery rules. *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) ("[T]he discovery rules do not permit [a party] to go on a fishing expedition.").

Although the Supreme Court in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), recognized an "after-acquired evidence" defense that an employer may use to limit an employee's remedies when evidence of wrongdoing by the employee is discovered after the employee's discharge, the employer may not conduct a fishing expedition in hopes of finding evidence to use as the basis of such a defense. Cognizant that "[t]he concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance" to resist claims "is not an insubstantial one," the Court noted the authority of the courts "to invoke the appropriate provisions of the Federal Rules of Civil

Procedure will deter most abuses." *Id.*

The need to prevent a fishing expedition is heightened here in light of plaintiff's right of privacy in his medical records and privilege from disclosure of confidential communications with Dr. Hunter. Defendant should not be given carte blanche to access and rummage through Plaintiff medical records.

**Defendant's alleged need to obtain Plaintiff's military records is outweighed by Plaintiff's privacy interest**

Defendant's alleged job-qualifications need for the military medical records sought in the proposed subpoena is outweighed by Plaintiff's right to privacy in his medical records and privilege in any such records that may be confidential communications with Dr. Hunter or another treating mental health provider. As explained above, the military medical records of Plaintiff that Defendant seeks to obtain are either irrelevant or marginally relevant to whether Plaintiff was "qualified" within the meaning of USERRA for reemployment as a police officer. Further, Defendant relied on the medical records obtained from Plaintiff prior to his release from the military in deciding Plaintiff was not so qualified; and although Plaintiff had authorized Defendant's nurse to obtain further military medical records, Defendant evidently then saw no need to seek the records it proposes to subpoena in this suit.

Given the exquisitely sensitive and private nature of the extensive unknown military medical records demanded in the proposed subpoena on the one hand and the marginal, if any, relevance they may have to whether Plaintiff was "qualified" for a reemployment position under Section 4313 of USERRA, the balance tips decidedly against disclosure of the records. *See Gatewood v. Stone Container Corp.*, 170 F.R.D. 455, 460 (S.D. Iowa 1996) (recognizing that "a person's medical and mental health history involve private, personal information which

ought not to be disclosed on the basis of attenuated relevance.").

**Conclusion**

For the foregoing reasons, respectfully asks the Court to quash and/or issue a protective order barring Defendant from serving its proposed subpoena duces tecum commanding production of Plaintiff's military medical records.

Respectfully submitted,

**/s/ Kathryn S.  Piscitelli**
Kathryn S. Piscitelli
Florida Bar No. 0368598
P.O.  Box 691166
Orlando, FL 32869-1166
Email: kpiscitelli1@cfl.rr.com
Phone: (407) 491-0143

**/s/ Peter F. Helwig**
Peter F. Helwig
Florida Bar No. 0588113
Harris & Helwig, P.A.
6700 South Florida Ave., Suite 31
Lakeland, FL 33813
Phone: (863) 648-2958
Facsimile: (863) 619-8901
Email: pfhelwig@tampbay.rr.com

**Attorneys for Plaintiff**

**Certificate of Service**

I hereby certify that on July 28, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

**/s/ Kathryn S. Piscitelli**
Kathryn S. Piscitelli